UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY V. MONTGOMERY,

Plaintiff,

v. Case No. 25-CV-669

DR. BARRY T. DAUGHTRY,

Defendant.

## DECISION AND ORDER

Plaintiff Timothy V. Montgomery is currently incarcerated at Oshkosh Correctional Institution and representing himself in this 42 U.S.C. § 1983 case. He is proceeding on an Eighth Amendment claim against Defendant Dr. Barry T. Daughtry based on allegations that Defendant was deliberately indifferent to Plaintiff's serious medical needs when he failed to promptly obtain treatment notes from an outside provider stating that Plaintiff needed surgery on his left knee and, as a result, the surgery was delayed and Plaintiff experienced significant pain. This matter comes before the Court on the parties' cross-motions for summary judgment. For the following reasons, Defendant's motion will be granted, Plaintiff's motion will be denied, and the case will be dismissed.

## PRELIMINARY MATTERS

Before turning to the parties' substantive arguments, the Court will address two preliminary matters. First, Defendant asserts that Plaintiff's opposition to Defendant's motion for summary judgment and Plaintiff's motion for summary judgment raise multiple new claims of purported deliberate indifference that were not alleged in his complaint. In particular, Plaintiff asserts that Defendant allegedly (1) canceled Plaintiff's ibuprofen prescription when Nurse Hartjes asked for

the order to be increased while he waited for surgery; (2) delayed ordering an X-ray in November 2023, resulting in his appointment with the orthopedic specialist being rescheduled to January 2024; (3) did not order Plaintiff to be moved to a cell on the ground floor; and (4) persisted in a course of treatment that Defendant knew to be ineffective and unacceptable.

"[D]istrict courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend." *Ollison v. Gossett*, 136 F.4th 729, 740 (7th Cir. 2025) (citing *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023)). Even though district courts have discretion to consider new factual allegations in a plaintiff's summary judgment briefing, "[i]t will rarely be appropriate to do so." *Schmees*, 77 F.4th at 490. "If the district court elects to do so, it should apply the familiar standards governing when leave to amend should be granted, paying particular attention to the potential for prejudice to other parties." *Id.*

The Court declines to consider Plaintiff's new factual allegations. "Defendants are entitled to fair notice of each claim against them." *Id.* at 488. Defendant moved for summary judgment based on the allegations in Plaintiff's complaint. In this case, Plaintiff "altered radically the factual basis of his complaint at summary judgment." *Whitaker v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014). Defendant would be significantly prejudiced if he were required to defend himself against numerous claims he did not know existed until Plaintiff asserted them for the first time in his summary judgment briefing. Therefore, the Court will not consider these new claims. The only claim the Court will consider is Plaintiff's assertion that Defendant was deliberately indifferent to Plaintiff's serious medical needs when he failed to promptly obtain treatment notes from an outside provider stating that Plaintiff needed surgery on his left knee, and as a result, the surgery was delayed and Plaintiff experienced significant pain.

Second, Defendant asserts that Plaintiff has failed to comply with the district's local rules governing summary judgment procedures. Pursuant to the local rules, along with a motion for

summary judgment, the moving party is required to file either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed facts must include numbered paragraphs containing short factual statements and specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C).

The party opposing the motion must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, a declaration, or other parts of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii).

Defendant, as required by the local rules, included copies of Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 along with the motion for summary judgment. (*See* ECF No. 33.) In addition, the day after Defendant filed his motion for summary judgment, the Court entered a notice and order informing Plaintiff that he was required to "respond to each of the proposed facts by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." (ECF No. 40 at 1.) The Court explained that "[i]t is not enough for [Plaintiff] to file only a declaration telling his side of the story. Civil L.R. 56(b)(2)(B) requires

[Plaintiff] to respond to *each* proposed fact." (*Id.*) The Court warned Plaintiff that if he "does not respond to a proposed fact, the Court will assume that [Plaintiff] does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." (*Id.* at 1–2.)

Plaintiff submitted his own statement of fact in support of his motion for summary judgment and in response to Defendant's motion for summary judgment. (*See* ECF Nos. 31, 51.) His statements of fact do not comply with the district court's local rules because Plaintiff did not cite to any declarations or other supporting materials to support each fact. Because Plaintiff's statements of fact are not supported and violate Civil Local Rule 56(b)(2)(B)(ii), the Court will not consider them. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [the local rules], the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

In addition, Plaintiff did not file a response to Defendant's proposed findings of fact. Even though Plaintiff is *pro se*, he cannot ignore the rules. As the Court warned Plaintiff would happen if he failed to respond to Defendant's proposed findings of fact, those facts are deemed admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L.R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same). With these considerations in mind, the Court turns to the substance of the motions for summary judgment.

## BACKGROUND

In 1994, Plaintiff fractured his left tibia just below the knee when he jumped out of a window. The fracture required surgery with an open reduction and internal fixation (ORIF) of the fracture and bone graft. During an ORIF procedure, the facture is aligned internally and then hardware, such as plates, screws, or rods, are used to stabilize the area. (ECF No. 35, ¶ 8.)

In August 2022, Plaintiff was transferred to Green Bay Correctional Institution (GBCI) from Dodge Correctional Institution. On September 14, 2022, Plaintiff had an intake examination with GBCI Advanced Practice Nurse Prescriber (APNP) Virginia Trzebiatowski. At the appointment, Plaintiff discussed both chronic shoulder and knee pain. APNP Trzebiatowski referred Plaintiff to pain management for his shoulder pain. To address Plaintiff's left-knee pain, APNP Trzebiatowski ordered a TENS unit for ninety days and referred Plaintiff to physical therapy and pain management. She also discussed a potential steroid injection in the knee, use of a brace, and strength and conditioning treatment. APNP Trzebiatowski entered an order for Prevea Health Physical Therapy to assess the need for a brace and TENS unit for Plaintiff's left knee. (*Id.* ¶¶ 9–11.)

On January 13, 2023, Plaintiff was seen at GBCI by physical therapy staff from Prevea Health and received a steroid injection in his left knee. Plaintiff first met with Defendant on January 25, 2023. (*Id.* ¶¶ 12–13.)

In 2023, Defendant worked at GBCI as a contract physician, employed through a staffing agency. Defendant was not a Department of Corrections employee. As an independent contractor, Defendant was given a list of patients to see on the days that he worked at GBCI. Defendant was not tasked with scheduling inmate appointments or referrals at GBCI, scheduling appointments with providers outside of GBCI, or scheduling appointments for offsite procedures, such as surgeries. In addition, Defendant was not responsible for reviewing or responding to Health

Services Requests (HSRs) or gathering records from outside providers. Defendant had no supervisory role and was not responsible for completing tasks beyond those assigned to him or for providing continuing and ongoing care to the inmates at GBCI. (*Id.* ¶¶ 4–7.)

During the January 25, 2023, appointment, Defendant discussed Plaintiff's concerns regarding his left knee pain. At the time, Plaintiff's left knee pain had improved since the January 13, 2023, steroid injection. (*Id.* ¶ 14.)

On March 1, 2023, Plaintiff began physical therapy for his left knee. On March 21, 2023, Defendant entered an order for Plaintiff to keep ibuprofen on his person. On April 7, 2023, Defendant had a second appointment with Plaintiff regarding Plaintiff's left knee pain. They discussed Plaintiff's history where Plaintiff fractured his left tibia in 1994 and the ORIF surgery to fix the fracture. Plaintiff claimed he could feel screws from the surgery protruding and felt popping and pain. Defendant examined Plaintiff's left knee. He observed that Plaintiff had a surgical scar and bony protrusion on the inside just below the knee. Plaintiff's range of motion went to 100 degrees, and his ligaments were intact and tender on the side of the knee. Later that day, Defendant entered an order referring Plaintiff to orthopedics. While Plaintiff waited to see orthopedics, he continued physical therapy appointments for his left knee. (*Id.* ¶¶ 15–22.)

Prevea Health Orthopedics scheduled Plaintiff's offsite orthopedics appointment by contacting Amanda Mapes, a Medical Program Assistant-Associate (MPAA) at GBCI, on May 23 and May 24, 2023. Plaintiff's appointment was scheduled for June 5, 2023, at Prevea clinic. (*Id.* ¶ 23.)

On May 25, 2023, Defendant wrote an order for Plaintiff to receive a TheraBand, a resistance device used for performing physical therapy exercises, for six months. Physical therapy staff issued the TheraBand to Plaintiff. (*Id.* ¶ 24.)

On June 5, 2023, Plaintiff had an offsite appointment with Physician's Assistant (PA) Andrew Godin at Hospital Sisters Health System Ashwaubenon Orthopedics Prevea. PA Godin discussed the history of Plaintiff's left-knee pain, examined Plaintiff, and took X-rays of the knee. PA Godin's assessment was that Plaintiff had chronic pain, had post-traumatic osteoarthritis, and retained orthopedic hardware. PA Godwin discussed the complicated nature of Plaintiff's injury with him and the likelihood of two separate surgeries, one to remove the hardware in Plaintiff's leg and another surgery several months later for a total knee replacement. PA Godin planned to reach out to his colleague, Dr. Mike Florack, who had expertise in traumatology and joint arthroplasty. After PA Godin heard back from Dr. Florack, PA Godin planned to reach out to MPAA Mapes at GBCI for further scheduling for Plaintiff. Plaintiff's after visit summary from the appointment with PA Godin notes that Plaintiff did not have any upcoming appointments scheduled. (*Id.* ¶¶ 25–30.)

The Off-Site Service Request and Report, which is the form that an inmate brings with him to off-site appointments, instructs the offsite provider's office to send consult/visit notes to the GBCI referring provider via fax. On June 5, 2023, Registered Nurse Ellyn Baker completed an offsite return evaluation for Plaintiff. Nurse Baker's follow-up actions included that "Ortho will call with information" and to "forward information to provider." Neither the Off-Site Service Request and Report, nor Nurse Baker's offsite return evaluation, contained any orders that needed to be entered by a GBCI provider. As a result, they were not forwarded to Defendant for review. Defendant's job responsibilities did not generally include reviewing Off-Site Service Request and Report forms after inmates returned to GBCI. He would only review them when tasked with doing so, such as when an order needed to be entered for the inmate. (*Id.* ¶¶ 29–33.)

On June 6, 2023, PA Godin instructed his staff to call MPAA Mapes to coordinate an office visit/surgical consult with Dr. Florack to discuss hardware removal and later knee replacement.

PA Godin's staff called and left messages for MPAA Mapes on June 6, June 7, and June 8, 2023. There is no indication that MPAA Mapes called the staff at Prevea back. The HSU staff at GBCI were responsible for scheduling appointments and procedures with offsite providers and requesting records from offsite providers. (*Id.* ¶¶ 35–36.)

On June 12, 2023, Defendant entered an order for Plaintiff to keep ibuprofen on his person for ninety days because the prior order from March 2023 was about to expire. On September 1, 2023, Defendant entered another order for Plaintiff to keep ibuprofen on his person for ninety days because the June 2023 order was about to expire. On September 15, 2023, Defendant entered an order for Plaintiff to keep Tylenol on his person for 350 days because a prior order from October 2022 was about to expire. These were general medication orders that did not require Defendant to meet with Plaintiff before entering. (*Id.* ¶¶ 37–39.)

On October 9, 2023, Plaintiff had a third appointment with Defendant. They discussed Plaintiff's knee pain, and Plaintiff reported that orthopedics had done an injection and he had started physical therapy for his knee. Plaintiff also indicated that there was a discussion about a possible knee replacement and hardware revision. Plaintiff took Tylenol and ibuprofen for the pain, but he was concerned about ibuprofen since he had a bleeding ulcer in the past. Defendant performed a physical examination of Plaintiff's left knee and reviewed X-rays from 2022. Defendant determined that Plaintiff would continue physical therapy and Defendant would get the notes from Plaintiff's orthopedic visit. He ordered pain relief muscle rub cream for Plaintiff to keep on his person and a follow-up visit. Later that day, Defendant emailed MPAA Lisa Merbach asking her to get the notes from Plaintiff's June orthopedic visit. MPAA Merbach replied the next day stating that she would ask for them again. (*Id.* ¶¶ 40–42.)

On October 19, 2023, Plaintiff had his final physical therapy appointment. Plaintiff reported that the TENS unit was helpful to manage his pain, he had been performing TheraBand

exercises without adverse reaction, and the muscle rub had been helpful to temporarily decrease his symptoms. However, Plaintiff had not noticeably improved in six physical therapy sessions, so he was discharged from physical therapy. The physical therapist noted that Plaintiff would potentially benefit from orthopedic consultation but would wait for notes from the last orthopedic appointment to be entered in Plaintiff's chart. (*Id.* ¶¶ 44–45.)

On October 31, 2023, Plaintiff submitted an HSR asking why the surgery recommended by the orthopedic doctor had not been approved and noting that Defendant had told him that Defendant could not see the records from Prevea. Nurse Henning replied on November 1, 2023, stating that "[t]he outside provider has not faxed their notes to scan into your chart yet." That same day, Nurse Henning emailed MPAAs Mapes and Merbach stating, "I do not see the patient's 6/5/2023 ortho notes scanned in yet. Am I missing them?" MPAA Merbach replied, "I will request the records." (*Id.* ¶¶ 46–47.)

On November 16, 2023, PA Godin's June 5, 2023, orthopedic progress notes and knee X-ray were faxed to GBCI. On November 20, 2023, Defendant entered an order for Plaintiff to have a consult with offsite orthopedic specialist Dr. Severance at GBCI regarding his left knee. Dr. Severance, from Prevea Orthopedics, came to GBCI for appointments. On November 21, 2023, Plaintiff's ibuprofen refill was voided due to non-use. (*Id.* ¶¶ 48–50.)

On November 29, 2023, Dr. Severance presented to GBCI for appointments. Dr. Severance was not able to see Plaintiff on November 29, 2023, due to time constraints, but he did a chart review and recommended orders to be completed before Plaintiff's next appointment. On November 30, 2023, Defendant entered an order for Plaintiff to have a consult with Dr. Severance after having X-rays of his left knee completed. The appointment with Dr. Severance was scheduled for January 17, 2024. On December 1, 2023, Defendant entered orders for X-rays of

Plaintiff's left knee, which were completed on December 7, 2023. Defendant's last day working at GBCI was in December 2023. (*Id.* ¶¶ 51–54.)

On January 17, 2024, Plaintiff met with Dr. Severance, who examined Plaintiff's left knee and recommended staged surgery, with the first surgery to remove the old surgical hardware from 1994, and the second surgery being a total knee arthroplasty six to eight weeks after that. Dr. Severance's plan for removal of the hardware included coordinating with GBCI for timing. The Off-Site Service Request and Report that returned to GBCI with Plaintiff from his appointment with Dr. Severance stated in the recommendations section, "Removal of hardware Left knee - outpatient surgery; Stage to perform Left total knee 8–12 weeks post removal." (*Id.* ¶¶ 55–56.)

On January 23, 2024, Dr. Constance Cayer Wirtz entered an order for an offsite appointment for Plaintiff with orthopedics to have the hardware in his left knee removed. On February 19, 2024, MPAA Mapes faxed Prevea asking Prevea to call her to schedule an appointment for Plaintiff. On February 20, 2024, the staff at Prevea called MPAA Mapes and they scheduled Plaintiff's surgery for April 8, 2024. On April 8, 2024, Plaintiff had the first surgery to remove the hardware in his left knee. On July 29, 2024, Plaintiff had a follow-up appointment with Prevea to discuss the total knee replacement surgery. That same day, Prevea staff left a message for MPAA Mapes to call Prevea and schedule the surgery. On September 9, 2024, MPAA Mapes called Prevea back and scheduled the total knee replacement for October 17, 2024. Plaintiff's surgery was completed on October 17, 2024. (*Id.* ¶¶ 57–64.)

## LEGAL STANDARD

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). The Court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The fact that the parties filed cross-motions for summary judgment does not alter this standard. The movant has the burden to show that summary judgment is appropriate. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The Court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (citation omitted). Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence. *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934. Speculation is insufficient to create a genuine dispute of material fact. *Id.* If the movant sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law, "[t]he court shall grant summary judgment . . . ." Fed. R. Civ. P. 56(a).

## ANALYSIS

Plaintiff asserts that Defendant violated the Eighth Amendment. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotation marks omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks (1) "whether a plaintiff suffered from an objectively serious medical condition" and (2) whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)). Defendant does not dispute that Plaintiff's left knee pain qualifies as an objectively serious medical condition. Therefore, the Court

will focus its analysis on whether Defendant was deliberately indifferent to Plaintiff's medical needs.

An official is deliberately indifferent if that official was aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Something more than negligence or even malpractice is required." *Pyles*, 771 F.3d at 409. Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. *Id.* A "[d]isagreement between a prisoner and his doctor or even between two medical professionals about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* "[T]he Eighth Amendment does not entitle prisoners to choose their course of treatment." *Harris v. Molinero*, 803 F. App'x 1, 5 (7th Cir. 2020).

Plaintiff asserts that, even though he told Defendant about his left knee pain, for months and months Defendant did nothing but ignore that Plaintiff needed surgery. He claims that Defendant delayed obtaining notes from the offsite orthopedic specialist indicating that Plaintiff needed surgery, and as a result, Plaintiff's surgery was delayed and he had pain in his knee.

The totality of Defendant's care shows that Defendant was not deliberately indifferent to Plaintiff's left knee pain. Defendant met with Plaintiff three times over the course of one year. After examining Plaintiff, Defendant entered orders for Plaintiff to see orthopedic specialists, both at GBCI and offsite, and to use a pain relief muscle rub cream. Outside of meeting with Plaintiff, Defendant entered orders to allow Plaintiff to keep ibuprofen and Tylenol on his person, to use a TheraBand to assist with performing his physical therapy exercises, and for X-rays. Plaintiff may disagree with Defendant's treatment decisions and treatment plan, but he presents no evidence to

support a conclusion that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (citation omitted); *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment.").

Plaintiff essentially seeks to hold Defendant liable for the delay in scheduling him for surgery. However, the Court can "only hold [Defendant] liable if he had control over the circumstances that caused the delays." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) (citation omitted). Nothing in the record establishes that Defendant caused any of the scheduling delays. It is undisputed that Defendant was not responsible for scheduling surgeries or obtaining records from offsite specialists. When Plaintiff told Defendant on October 9, 2023, that he discussed possible knee replacement and hardware revision with PA Godin at the June 6, 2023, offsite appointment, Defendant asked MPAA Merbach to obtain the June 2023 treatment notes from Prevea. MPAA Merbach reached out to Prevea, and Prevea staff faxed the records to GBCI on November 16, 2023. Defendant's last day working at GBCI was in December 2023. In February 2024, MPAA Mapes scheduled Plaintiff for his first surgery at Prevea on April 8, 2024. He underwent his second surgery on October 17, 2024. "Although there were clearly delays in [the plaintiff]'s treatment, the evidence suggests [the defendant] did what he could within the limits of his role to move the ball forward." *Id.* Because Defendant was not personally responsible for the delays, he cannot be held liable. *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

In short, no reasonable jury could find that Defendant was deliberately indifferent in violation of Plaintiff's Eighth Amendment rights. Accordingly, Defendant is entitled to summary judgment.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (ECF No. 33) is **GRANTED**. Plaintiff's motion for summary judgment (ECF No. 29) is **DENIED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin on November 10, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.